UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| KATHRYN REYNOLDS and NORMAN GARAND,<br><br>Plaintiffs-Appellants,<br><br>v.<br><br>NATIONAL DEFAULT SERVICING CORPORATION, et al.,<br><br>Defendants-Appellees. | Case No. 3:16-cv-00047-MMD-VPC<br><br>ORDER |

**I.   SUMMARY**

Defendant National Default Servicing Corporation ("NDSC") removed this case based on diversity jurisdiction. (ECF No. 1.) Before the Court are the following motions: (1) Plaintiffs' motion to remand ("Plaintiff's Motion") (ECF No. 17); Defendants motions for summary judgment (collectively, "Defendants' Motions") (ECF Nos. 8, 13, 15); and Plaintiffs' motions to strike (ECF Nos. 18, 23, 24).¹ For the reasons discussed below, the Court denies Plaintiffs' motion to remand and motions to strike and grants Defendants' Motions.

**II.   BACKGROUND**

The following facts are taken primarily from the Complaint, which is 60 pages in length and difficult to understand, and the documents attached to the Complaint.²

---

¹Plaintiff's first motion to strike was filed as a response to Gregory Wilde's motion for summary judgment. (ECF No. 18.)

²The documents attached to the Complaint that are referenced in this section are publicly recorded documents. The Court takes judicial notice of these documents. *See* *(fn. cont...)*

Plaintiffs own real property located at 350 Broadway Blvd. in Reno, Nevada ("the Property). (ECF No. 6-1 at 3.) In January 2007, Plaintiff Norman Garand obtained a loan from Washington Mutual Bank secured by a Deed of Trust ("DOT") on the Property and a Promissory Note in the amount of $208,000. (*Id.* at 7-8; ECF No. 6-1 at 72-102.)

On October 12, 2009, California Reconveyance Company ("CRC") recorded a Notice of Default and Election to Sell Under Deed of Trust ("NOD") with Washoe County Recorder. (ECF No. 6-1 at 104-05.) CRC recorded a Certificate and a Notice of Trustee's Sale in February 2010. (*Id.* at 107-10.)

In March 2010, Garand initiated action in state court to challenge the foreclosure sale. This action was removed to this Court and assigned Case No. 3:10-cv-00212-LRH-VPC ("First Action").[3] On June 29, 2011, the Court granted summary judgment in favor of CRC and J.P. Morgan Chase Bank, N.A. ("Chase"). (First Action, ECF No. 97.) In the June 29, 2011 Order ("June 2011 Order"), the Court found that CRC had standing to file the NOD, and Chase and CRC complied with all applicable sections of NRS § 107.080 in initiating the non-judicial foreclosure. (*Id.* at 3-5.) On June 27, 2013, the Ninth Circuit affirmed. (First Action, ECF No. 115.) The Ninth Circuit found that "CRC was a proper party to execute and record the foreclosure notices," and "CRC's failure to disclose the current holder of the mortgage note did not render the notice of default defective: at the time CRC recorded the notices of default and sale, Nevada law imposed no such requirements for non-owner occupied residential property." (*Id.* at 2-3.) The Ninth Circuit rejected Garand's arguments that the note and deed of trust are unenforceable, finding that the "transfer of the mortgage note also effected a transfer of

///

---

(...fn. cont.)
*Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004) (the court may take judicial notice of the records of state agencies and other undisputed matters of public record under Fed. R. Evid. 201).

[3]The Court takes judicial notice of the documents filed in the First Action, including the Court's dismissal order and the Ninth Circuit's order affirming the dismissal, which are matters of public records. *See United States v. 14.02 Acres of Land*, 547 F.3d 943, 955 (9th Cir. 2008) (the court "may take judicial notice of matters of public record").

the deed of trust," which entitled Chase to enforce both instruments. (*Id.* at 4-5.) The Ninth Circuit further rejected Garand's argument that the note was improperly split from the deed of trust: "the note and deed of trust were sold 'together,' because the mortgage followed the note automatically, without the need for a corresponding assignment." (*Id.* at 5.)

In the meantime, two assignments transferring the rights under DOT were recorded. (ECF No. 6-1 at 123-24, 130.) In the first assignment, recorded on August 23, 2013, the Federal Deposit Insurance Corporation, as receiver of Washington Mutual Bank, transferred the rights under the DOT to Chase; the second assignment, recorded on July 14, 2015, transferred Chase's rights to Federal Home Loan Mortgage Company ("Freddie Mac"). (*Id.*) Cabined between these two assignments was a Quitclaim Deed, recorded on September 8, 2014, transferring ownership of the Property from Garand to Garand and Kathryn Reynolds. (ECF No. 8-1 at 8-9.)

On September 29, 2015, a Substitution of Trustee was recorded showing Freddie Mac appointed NDSC as the new trustee under the DOT. (ECF No. 8-1 at 11.) On October 29, 2015, a Notice of Trustee's Sale was recorded scheduling the sale of the Property for November 20, 2015. (ECF No. 61-1 at 132-34.) At the scheduled sale, Freddie Mac acquired the Property by the Trustee's Deed Upon Sale. (*Id.* at 159.)

On January 4, 2016, Plaintiff filed this action in state court, asserting fifteen state law claims against NDSC and two attorneys, Gregory Wilde ("Wilde") and Cindy Lee Stock ("Stock") and seeking declaratory and injunctive reliefs. (ECF No. 6-1.) The Complaint alleges the following claims: violations of NRS §§ 107.080, 107.028, 106.210, 106.260, 107.073, 107.077, 205.395; wrongful foreclosure; negligence; fraud; fraudulent misrepresentation; intentional interference with contractual relations; nuisance; trespass; and quiet title. (ECF No. 6-1.)

On January 29, 2016, NDSC removed the action. (ECF No. 1.) Stock consented to removal on February 3, 2016 (ECF No. 3); Wilde filed his consent on February 5, 2016 (ECF No. 7).

Wilde was the first defendant to move for summary judgment. In response, Plaintiffs moved to remand. Because Plaintiff's Motion challenges the Court's jurisdiction, the Court will address Plaintiff's Motion first.

**III.   MOTION TO REMAND**

Plaintiffs assert that the Court lacks diversity jurisdiction because there is no diversity of citizenship and the amount in controversy is not satisfied. In particular, Plaintiffs argue that because NDSC is qualified to do business in Nevada, it is a citizen of Nevada, which eliminates diversity among the parties. (ECF No. 17 at 8.) They assert that the amount in controversy is $5,000 plus cost. (*Id.* at 6, 9.)

Federal courts are courts of limited jurisdiction, having subject-matter jurisdiction only over matters authorized by the Constitution and Congress. U.S. Const. art. III, § 2, cl. 1; *e.g., Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). However, courts strictly construe the removal statute against removal jurisdiction, and "[f]ederal jurisdiction *must* be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (emphasis added). The party seeking removal bears the burden of establishing federal jurisdiction. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).

To establish subject matter jurisdiction pursuant to diversity of citizenship, the party asserting jurisdiction must show: (1) complete diversity of citizenship among opposing parties and (2) an amount in controversy exceeding $75,000. 28 U.S.C. § 1332(a). Where a defendant removes a plaintiff's state action on the basis of diversity jurisdiction, the defendant must either: (1) demonstrate that it is facially evident from the plaintiff's complaint that the plaintiff seeks in excess of $75,000, or (2) prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional limit. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115 (9th Cir. 2004). In considering what evidence may be considered under (2) above, the Ninth Circuit has adopted the

4

"practice of considering facts presented in the removal petition as well as any 'summary-judgement-type evidence relevant to the amount in controversy at the time of removal.'" *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

The Court finds that the amount in controversy requirement is satisfied. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Cohn v. Petsmart*, 281 F.3d 837, 840 (9th Cir. 2002). The Complaint challenges the foreclosure proceedings initiated on the Property and asserts a quiet title action claim. (ECF No. 6-1 at 60.) In particular, the Complaint seeks, among several reliefs, "a declaration and determination that title be quieted of the breached Washington Mutual Deed of Trust that secured the $208,000 Promissory Note." (ECF No. 6-1 at 61.) Plaintiffs further explain in their Motion that they mainly seek to quiet title to the Property. (ECF No. 17 at 9-11.) The Complaint attaches a Trustee's Deed Upon Sale, identifying $120,082.00 as Freddie Mac's credit bid for the Property. (ECF No. 6-1 at 159.) Thus, the value of the Property that Plaintiffs seek to quiet title to exceeds the amount in controversy.

The Court also finds that the parties are diverse. NDSC asserts in its notice of removal that NDSC is an Arizona corporation whose principal place of business is located in Phoenix, Arizona. (ECF No. 1 at 3.) Plaintiffs do not challenge this allegation, but contend that because NDSC is qualified to do business in Nevada, it is a citizen of Nevada. (ECF No. 17 at 8.) Plaintiffs are wrong. A corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The term "principal place of business" means "the place where a corporation's officers direct, control, and coordinate the corporation's activities. . . . And in practice it should normally be the place where the corporation maintains it headquarters — provided that the headquarters is the actual center of direction control

5

and coordination[.]" *Hertz Corp. v. Friend,* 559 U.S. 77, 92-93 (2010). Plaintiffs do not dispute that NDSC's principal place of business is in Arizona. NDSC thus has carried its burden in establishing that it is a citizen of Arizona.

Plaintiffs point out that Stock and Wilde are citizens of Nevada. (ECF No. 17 at 12.) However, the Court agrees with NDSC that Stock and Wilde have been fraudulently joined and their presence in this case is disregarded for purposes of determining diversity. *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); ECF No. 1 at 3-5.

This action was properly removed. Accordingly, Plaintiffs' Motion will be denied.

## IV.    MOTIONS FOR SUMMARY JUDGMENT

### A.    Legal Standard

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving

///

6

party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

### B.     Filings Relating to Defendants' Motions

All three Defendants filed separate motions for summary judgment. Wilde filed his motion on February 5, 2016. (ECF No. 8.) NDSC filed its motion on February 16, 2016. (ECF No. 13.) Stock joined Wilde's motion and submitted her own motion for summary judgment. (ECF No. 15.) Plaintiffs filed a response to Wilde's motion entitled: Plaintiff's Motion to Strike Defendant Gregory Wilde's Motion for Summary Judgment (FRCP 12(b)) [Joined by a Motion to Remand Due to Lack of Subject Matter and Diversity Jurisdiction and Request for Judicial Notice]. (ECF No. 18.) The "Request for Judicial Notice" was attached to Plaintiff's response. (ECF No. 18-1.) Plaintiffs separately moved to strike NDSC and Stock's motions. (ECF Nos. 23, 24.)

In Plaintiffs' three motions to strike Defendants' Motions, Plaintiffs indicate that they understood they would be given the opportunity to respond to Defendants' Motions should the Court deny their Motion to Remand. (ECF No. 18 at 9; ECF No. 24 at 10; ECF No. 24 at 14.) Plaintiffs' understanding is unfounded. Their Motion to Remand does

7

not suspend the briefing on Defendants' Motions. While they are proceeding pro se, pro se litigants like Plaintiffs must nevertheless follow the same rules of procedure that govern other litigants.[4] *See United States v. Merrill,* 746 F.2d 458, 465 (9th Cir.1984), *cert. denied,* 469 U.S. 1165, (1985). Moreover, despite such statement about their understanding, Plaintiffs did address the arguments made in Defendants' Motions, assert the merits of their claims and contend Defendants' Motions should be denied for failure to comply with Rule 56. (*See, e.g.,* ECF No. 23 at 3-13, 16-22.)[5] Plaintiffs' motions to strike are essentially responses to Defendants' Motions, and will be construed as such.

## C. Defendants' Motions

Defendants raised similar arguments in their Motions. Because of the number of claims in the Complaint and the prolix allegations supporting these claims, Defendants grouped the claims that challenge the foreclosure proceedings together. The Court agrees and in fact finds that all of the claims asserted in the Complaint are premised on allegations of defective foreclosure proceedings.[6]

Plaintiffs' claims are based on conclusory allegations that are not supported by the undisputed publicly recorded documents and on legal grounds that are contrary to the decisions in the First Action and that essentially seek to reargue those decisions. In particular, the Complaint alleges that NDSC is not the proper trustee of record based on

///

---

[4]Reynolds is one of the attorneys who represented Garand in the First Action and should be familiar with the Federal Rules of Civil Procedure.

[5]Plaintiffs primarily argue why the Court and the Ninth Circuit erred in the First Action and dispute the publicly recorded documents that are attached to their Complaint. (ECF No. 23 at 3-13.)

[6]For example, the fraud claim is based on allegations that Defendants made false statement that Garand was in default and Defendants had authority to sell the Property and that "Stock made false representations to Plaintiffs' tenants claiming lawful sale had occurred." (ECF No. 6-1 at 47). The slander claim is also based in part on false representation to Plaintiffs' tenants about title to the Property. (*Id.* at 59.) The interference with contract claim is based on Stock sending a letter to Plaintiffs' tenants notifying them of Freddie Mac's acquisition of the Property. (*Id.* at 50.) As discussed herein, these claims are premised on the unfounded allegations that Freddie did not have a right to foreclose on the Property.

allegations that (1) Plaintiffs own title to the Property free and clear of any encumbrances because the DOT was "breached" and the courts erred in the First Action, including allegations that "the judges ignore private contract rights of borrower over the bank with no documentation," and "Plaintiffs' property has been made inalienable by the 9th circuit court" (ECF No. 6-1 at 3-5; 10-14, 46, 50); (2) Defendants did not cause the NOD to be recorded (*id.* at 40); (3) Defendants cannot rely on the NOD to complete the foreclosure because the Ninth Circuit was reviewing NOD (*id.* at 38); and (4) Chase's August 13, 2013, assignment of the DOT was improper because the DOT cannot be assigned without the corresponding assignment of the note, which affects NDSC's status as the trustee (*id.* at 22-26, 59). These allegations improperly seek to attack the rulings in the First Action. In the June 2011 Order, the Court found that CRC had standing to file the NOD, and Chase and CRC complied with all applicable sections of NRS § 107.080 in initiating the non-judicial foreclosure. (First Action, ECF No. 97 at 3-5.) In affirming the Court's decision, the Ninth Circuit rejected Garand's arguments that the note and deed of trust are unenforceable and were improperly separated, finding that Chase is entitled to enforce both instruments. (First Action, ECF No. 115 at 4-5.)

The procedures for conducting a trustee's foreclosure sale are set forth in NRS § 107.080. To commence a foreclosure, the beneficiary, the successor in interest of the beneficiary, or the trustee must execute and record a notice of default and election to sell. NRS § 107.080(2)(c). A copy of the notice of default and election to sell must be mailed by registered mail or certified mail with return receipt requested to "the grantor or, to the person who holds the title of record on the date the notice of default and election to sell is recorded . . ." NRS § 107.080(3). The trustee or other person authorized to make the sale must wait at least three months after recording the notice of default and election to sell before the sale may proceed. NRS § 107.080(2)(e). After the three month period, the trustee must give notice of the time and place of the sale to the

///

persons who are entitled to notice. NRS § 107.080(4)(a). Defendants have complied with these procedures to effectuate non-judicial foreclosure on the Property.

Based on the rulings in the First Action, Chase was entitled to enforce the note and the deed of trust and the non-judicial foreclosure proceedings were properly initiated by CRC. On July 14, 2015, Chase assigned its rights under the DOT to Freddie Mac (ECF No. 6-1 at 130); and Freddie Mac appointed NDSC as the new trustee under the DOT (ECF No. 8-1 at 11.) On October 29, 2015, a Notice of Trustee's Sale was recorded scheduling the sale of the Property for November 20, 2015. (ECF No. 61-1 at 132-34.) Freddie Mac acquired the Property by the Trustee's Deed Upon Sale. (*Id.* at 159.) These transactions completed the foreclosure proceedings on the Property. Defendants in this action did nothing out of the ordinary to complete the foreclosure proceedings initiated by CRC's recording of the NOD, and any representations that they made about the proceedings and Freddie Mac's acquisition of the Property are not false.

Plaintiffs' claims challenge the foreclosure proceedings on the Property, including the various recorded instruments recited in this Order, and Freddie Mac's acquisition of the Property at the foreclosure sale on November 20, 2015. The Court finds that these claims are premised on facts that are contrary to the undisputed public records and legal arguments that were rejected in the First Action. Accordingly, the Court will grant summary judgment in favor of Defendants.

**V.    CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the parties' motions.

It is therefore ordered that Plaintiffs' motion to remand (ECF No. 17) is denied.

It is further ordered that Defendants motions for summary judgment (ECF Nos. 8, 13, 15) are granted.

10

It is further ordered that Plaintiffs' motions to strike (ECF Nos. 18, 23, 24) are denied.

The Clerk is directed to enter judgment in favor of Defendants in accordance with this Order and close this case.

DATED THIS 23rd day of September 2016.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE